Pamela ROBINSON *v.* STATE of Arkansas

CA CR 06-698                                        254 S.W.3d 750

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

238

The Cannon Law Firm, PLC, by: David R. Cannon, for appellant.

Mike Beebe, Att'y Gen., by: Beth B. Carson, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Judge. Appellant Pamela Robinson appeals her April 7, 2006, conviction of negligent homicide, claiming that the Pulaski County Circuit Court erred in denying her motion for a directed verdict based on insufficient evidence of her intoxication at the time of the accident. We affirm as modified.

Appellant was arrested March 10, 2005, on one count of felony-negligent homicide after being involved in a two-car motor-vehicle accident that caused the death of Derek Balog. Deputy Clay Almond, the first officer to arrive on the scene, stayed with appellant until medical personnel arrived. He noted no signs of intoxication or controlled-substance use by appellant. Investigator James Lett performed a reconstruction of the accident scene to determine the cause. He found that appellant was traveling east on a two-lane highway and approached a curve in the road. The road was in good condition and there were no obstructions to her view of the oncoming lane of traffic. Lett stated that appellant's vehicle crossed the center line and hit Balog's vehicle head-on. Lett determined that appellant's vehicle was traveling at least twice the rate of speed as Balog's vehicle at the time of impact. Lett opined that if appellant had been merely inattentive in negotiating the curve, her vehicle would have veered out to her right and traveled outside of the lane, rather than crossing to her left into the oncoming lane. He said that cutting across the lanes in an s-curve is an indicator of possible intoxication. He also said that her failure to make any attempt to avoid the collision was an indication of her "definite impairment." However, he received negative responses when he questioned officers on the scene about whether appellant appeared to be intoxicated.

Don Riddle, a forensic toxicologist for the state crime laboratory, tested appellant's blood and found it to be positive for lidocaine and diazepam. He stated that he tested the blood he had

for "everything." He also stated that there was not enough blood to determine the presence of anything other than what he reported. His report states "insufficient quantity for analysis," which means he did not have enough blood to complete his tests.

Dr. Sam Matthews, a toxicologist at Baptist Medical Center, testified that he reviewed the urine test performed on appellant upon her arrival at the hospital. That test showed positive results for benzodiazepines, amphetamines, marijuana, and opiates. He opined that the positive reaction for opiates was caused by the hospital's administering of morphine to appellant before the urine sample was taken. He stated that the presence of marijuana indicated usage within the last thirty-six hours and methamphetamine within the last twelve to twenty-four hours prior to the sample being taken. He stated that he could not infer any type of intoxication from the urine-drug test.

After the introduction of these facts and evidence, appellant moved for a directed verdict, arguing that the State had failed to show that she was intoxicated at the time of the accident. This motion was denied. Appellant then presented two witnesses who were her co-workers. Both testified that they had worked with appellant on the morning of the accident and did not believe she was intoxicated either during work or when she left for her lunch break. Appellant renewed her motion for directed verdict. After brief arguments by both parties, the trial court found appellant guilty. Appellant filed a timely notice of appeal on April 7, 2006.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In *Saul v. State*, 365 Ark. 77, 225 S.W.3d 373 (2006), the Arkansas Supreme Court stated that in reviewing a challenge to the sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the State, and consider only evidence that supports the verdict. If substantial evidence exists, the appellate court will affirm a conviction. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

A person commits negligent homicide by causing the death of another person not constituting murder or manslaughter as a result of operating a vehicle while intoxicated. Ark. Code Ann.

§ 5-10-105(a)(1)(A) (Supp. 2005). A person convicted of negligent homicide under these circumstances is guilty of a Class C felony. Ark. Code Ann. § 5-10-105(a)(2). A person commits negligent homicide if she negligently causes the death of another person. Ark. Code Ann. § 5-10-105(b)(1). This is a Class A misdemeanor. Ark. Code Ann. § 5-10-105(b)(2). The statute further defines "intoxicated" as:

> [I]nfluenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver therefore constitutes a clear and substantial danger of physical injury or death to himself or herself and other motorists or pedestrians.

Ark. Code Ann. § 5-10-105(c).

Appellant contends that there was not sufficient evidence of her alleged intoxication for the trial court to find her guilty of negligent homicide. She claims that all previous cases addressing the issue of intoxication based on prior drug use have included some evidence of physical and mental impairment. Appellant cites two cases wherein physical evidence of impairment controlled. *See Mace v. State*, 328 Ark. 536, 944 S.W.2d 830 (1997) (where evidence established that defendant's driving skills were impaired as a result of ingestion of a controlled substance, supporting a conviction for driving while intoxicated (DWI), given two officers' testimony that, in their opinions, defendant was intoxicated, officers' observations that defendant had extremely bloodshot eyes, was very unsteady on his feet, and had to hang onto the vehicle for support, and testimony that defendant failed all four field-sobriety tests administered to him); *Hatley v. State*, 68 Ark. App. 209, 5 S.W.3d 86 (1999) (finding that defendant was intoxicated at time he crashed his car into car parked off roadway, as required to sustain conviction for negligent homicide, was supported by testimony of physician who examined defendant on day of accident and of officers at scene of accident that defendant smelled of alcohol, by testimony of officer that defendant had bloodshot eyes, by testimony of another officer that defendant refused to take blood test after signing consent form, and by testimony of witness that defendant was weaving across two lanes of traffic and generally driving in a manner that caused the witness to believe that defendant was either asleep or intoxicated).

Appellant emphasizes that neither deputies Almond nor King, both of whom observed appellant after the accident, believed that she was intoxicated. Investigator Lett opined that, because appellant failed to avoid the accident, he believed her to be impaired. However, Lett questioned the officers who observed appellant after the accident, and their opinions were that appellant was not intoxicated. Further, Lett stated that it was not uncommon for drivers to "cut lanes" while negotiating a curve, and this was not necessarily a sign of intoxication. Appellant states that the crime-laboratory chemist admitted that he could not conclude whether appellant was intoxicated based on his tests, and that observation of the person is required to make such a determination. Further, the toxicologist at Baptist Medical Center testified that he could only state that there had been marijuana usage within a period of two to three days prior to the test and methamphetamine usage anywhere from twelve to twenty-four hours before the test. He admitted that he did not test the concentration of the urine sample, and that a more concentrated sample could cause the result to seem abnormally high. Finally, the toxicologist testified that the presence of a controlled substance in a person's urine does not mean that the person is under the influence of a controlled substance, only that there has been recent use. Appellant also argues that two of her coworkers testified that she was not intoxicated for the three-and-a-half hours prior to the accident.

■ Appellant argues that under *State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996), an officer's observation can constitute competent evidence to support a DWI charge. Therefore, appellant claims that the converse must also be true: an officer's observation can constitute competent evidence against a charge of DWI. Appellant claims that here, viewing the evidence in the light most favorable to the State, there was not substantial evidence of intoxication to convict the appellant of negligent homicide. We agree.

The State concedes that the fatal accident alone is insufficient evidence of appellant's intoxication. However, the State claims that the manner in which the accident occurred, the passage of time, and appellant's use of multiple controlled substances are sufficient evidence to support the trial court's conclusion that she was intoxicated. The State cites *Roach v. State*, 30 Ark. App. 119, 783 S.W.2d 376 (1990), and *Hollomon v. State*, 820 So.2d 52 (Miss. Ct. App. 2002), in support of this contention.

In *Roach, supra,* no blood or urine tests were performed, but police suspected Ms. Roach of being under the influence of something. Officers testified that the appellant was unsteady on her feet, her speech was slurred, and she was in an emotional state, "bawling all the time." *Roach,* 30 Ark. App. at 120, 783 S.W.2d at 376. There were two prescription-pill bottles in her car that had been filled the previous day, with one being empty. The trial court found Ms. Roach guilty of driving under the influence of a controlled substance. This court reversed her conviction only because there was no proof that the pills were a controlled substance, which was one of the elements that the State was required to establish. This court said, nevertheless, that there was sufficient evidence to support the conclusion that she was impaired and her skills and judgment altered, and that the jury could conclude without speculation that she took the pills.

*Roach* can be distinguished from the instant case. Here, appellant was not observed by police officers to have slurred speech or to have acted in any way to arouse suspicion that she was under the influence of any drug, except for the fact of the accident. However, as stated by the State, the accident alone is not enough.

In *Hollomon, supra,* the question before the Mississippi court was whether there was sufficient evidence of intoxication at the time of the fatal-vehicle accident. The defendant tested positive for methamphetamine and cocaine. The trial court found him guilty, and the Mississippi Court of Appeals noted that the issue of whether defendant was under the influence was for the fact finder and that appellate courts may take judicial notice that the presence of even small amounts of intoxicants can cause "an almost imperceptible impairment that, nevertheless, 'may spell the difference between accident or no accident.' " *Hollomon,* 820 So.2d at 58.

Again, *Hollomon* can be distinguished because the defendant therein had been seen two hours before the accident acting "hyper" in a store. Also, the victim testified that the defendant's car was weaving on the road before the accident. Finally, when defendant's trunk popped open, the debris left behind was beer cans and drug paraphernalia. Here, we have no evidence of behavior beforehand that showed appellant was under the influence of any drug or intoxicant. Also, the police officers on the scene testified that there was no drug paraphernalia found in her car. Finally, the police officers who observed her after the accident did not believe her to be intoxicated.

Because the toxicologist and the crime-laboratory toxicologist could not say that the test results proved she was intoxicated, and the witnesses say she did not seem intoxicated, evidence of the accident and urine screen alone are not sufficient to find appellant guilty of felony-negligent homicide in this case. Under *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002), the determination of when an offense is included in another offense depends on whether it meets one of the three tests set forth in Ark. Code Ann. § 5-1-110(b) (Repl. 1997), which provides in relevant part:

> (b) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:
>
> (1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included within it; or
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish its commission.

The offense of negligent homicide is set forth in Ark. Code Ann. § 5-10-105, which states as follows:

> (a)(1) A person commits negligent homicide if he or she negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a vehicle, an aircraft, or a watercraft:
>
> (A) While intoxicated;
>
> (B)(i) If at that time there is an alcohol concentration of eight-hundredths (0.08) or more in the person's breath or blood based upon the definition of breath, blood, and urine concentration in § 5-65-204, as determined by a chemical test of the person's blood, urine, breath, or other bodily substance.
>
> (ii) The method of chemical analysis of the person's blood, urine, or breath shall be made in accordance with §§ 5-65-204 and 5-65-206; or
>
> (C) While passing a stopped school bus in violation of § 27-51-1004.

(2) A person who violates subdivision (a)(1) of this section is guilty of a Class C felony.

(b)(1) A person commits negligent homicide if he or she negligently causes the death of another person.

(2) A person who violates subdivision (b)(1) of this section is guilty of a Class A misdemeanor.

In *Allen v. State*, 64 Ark. App. 49, 977 S.W.2d 230 (1998), this court affirmed and modified the trial court's ruling, holding that the conviction for second-degree battery was not supported by sufficient evidence, but that the evidence was sufficient to convict for second-degree assault, which was a lesser-included offense. Here, while the State failed to prove the element of intoxication, we hold that the State did prove the necessary elements of misdemeanor-negligent homicide. In *Utley v. State*, 366 Ark. 514, 237 S.W.3d 27 (2006), the Arkansas Supreme Court held that a person driving a garbage truck around a curve and on a bridge should be aware that driving on the wrong side of the road presents a substantial and unjustifiable risk that he might hit a car traveling in the opposite direction and kill someone in that car. The instant case closely parallels *Utley*.

Viewing the evidence in the light most favorable to the State and considering only the evidence that supports the verdict, we hold that substantial evidence exists to support a conviction of misdemeanor-negligent homicide. The testimony of the accident reconstructionist was that appellant was traveling at a high rate of speed around a curve in the road. She had an unimpaired view and failed to apply the brakes, which resulted in a head-on collision that killed Derek Balog. Pursuant to *Utley, supra*, the evidence presented is sufficient.

Accordingly, we modify the judgment of conviction to the lesser-included offense of negligent homicide under Ark. Code Ann. § 5-10-105(b)(1), and reduce Robinson's sentence to the maximum allowable for Class A misdemeanors, one year imprisonment and $1000 fine. *See* Ark. Code Ann. §§ 5-4-401(b)(1) and 5-4-201(b)(1) (Repl. 2006).

Affirmed as modified.

ROBBINS and GRIFFEN, JJ., agree.