2011 Ark. App. 511

**Courvoisier Marteze RILEY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1334.**

Court of Appeals of Arkansas.

Sept. 7, 2011.

Clint Eugene Miller, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Rebecca B. Kane, Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Courvoisier Riley appeals the judgment and commitment orders entered in Pulaski County Circuit Court case numbers CR06–890, in which Riley's probation was revoked, and CR09–4179, in which Riley was convicted of aggravated robbery, aggravated residential burglary, and misdemeanor fleeing. We find no error and affirm, although we remand in part to correct a clerical error on the judgment and commitment order.

In CR06–890, Riley pled guilty on September 11, 2006, to one count of residential burglary and one count of misdemeanor theft of property. The circuit court placed Riley on probation for a term of five years. On February 28, 2007, the State filed a petition to revoke Riley's probation, alleging that he had failed to report to his probation officer and failed to pay the restitution that was part of his probationary sentence. Riley entered a plea of guilty to the revocation charges, and the circuit court again placed Riley on five years' probation. Among the terms of Riley's probation was that he obey all federal and state laws.

On August 26, 2009, the State filed an amended petition for revocation, alleging that Riley had violated the terms of his probation by committing the offenses of being a felon in possession of a firearm

and possession of marijuana. In addition, the State alleged that Riley had violated the terms of his probation by committing the offense of aggravated robbery.

The aggravated-robbery allegation also formed the basis of the charges in CR09–4179. In a three-count information, the State charged Riley with aggravated robbery, aggravated residential burglary, and misdemeanor fleeing. Following a bench trial on these charges on September 8, 2010, the circuit court found Riley guilty of all three counts, merging the fleeing count into the other two felonies; Riley was sentenced to ten years' imprisonment on each of the felony offenses, to run concurrently. In addition, the court found that Riley had violated the terms and conditions of his probation and sentenced him to ten years' imprisonment, also to run concurrently.

Riley filed timely notices of appeal from both judgment and commitment orders, and he now raises three points on appeal: 1) the evidence was insufficient in Case No. CR09–4179 to convict him of aggravated robbery and aggravated residential burglary; 2) the State failed to prove by a preponderance of the evidence in Case No. CR06–890 that Riley had committed the offenses of aggravated robbery and aggravated residential burglary; and 3) the judgment and commitment order in CR09–4179 erroneously reflects that Riley was convicted of Class C felony fleeing, when he was in actuality convicted of Class C misdemeanor fleeing.

A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are challenges to the sufficiency of the evidence. Ark. R.Crim. P. 33.1 (2009); *Hinton v. State*, 2010 Ark. App. 341, 2010 WL 1609611. When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *Gamble v. State*, 351 Ark. 541, 95 S.W.3d 755 (2003). Only evidence supporting the verdict will be considered. *Hinton, supra*. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). Circumstantial evidence may constitute sufficient evidence to support a conviction, but it must exclude every other reasonable hypothesis other than the guilt of the accused. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the trier of fact to decide. *Id.*

A person commits the offense of aggravated robbery if he or she commits robbery as defined in Arkansas Code Annotated section 5–12–102 (Repl.2006), and the person

(1) Is armed with a deadly weapon;

(2) Represents by word or conduct that he or she is armed with a deadly weapon; or

(3) Inflicts or attempts to inflict death or serious physical injury upon another person.

Ark.Code Ann. § 5–12–103(a) (Repl. 2006). Robbery, in turn, is defined in Arkansas Code Annotated section 5–12–102:

A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person.

Arkansas Code Annotated section 5–39–204(a) (Supp.2009) provides that a person commits aggravated residential burglary if he or she commits residential burglary, as defined in Arkansas Code Annotated section 5–39–201 (Repl.2006),[1] of a residential occupiable structure occupied by any person, and he or she

> (1) Is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon; or

> (2) Inflicts or attempts to inflict death or serious physical injury upon another person.

See also Tucker v. State, 2011 Ark. 144, 381 S.W.3d 1.

At trial, Stanley Nelson testified that, on October 13, 2009,[2] Riley came to Nelson's home and stated that he was there to repay fifteen dollars that a woman named Candy owed Nelson. Nelson stated that he had loaned Candy the money and had been holding her DVD player as collateral until she could repay him. Nelson told Riley to go to the back door, and when Nelson met Riley there with the DVD player, Riley had his wallet out "like he was fixing to hand me" the fifteen dollars. Instead, Riley stepped into the house, walked into the kitchen, and pulled a sawed-off shotgun from under his dark, hooded jacket.

Riley pointed the shotgun at Nelson's head and demanded that Nelson give him all his money. Nelson told Riley that he had no money, and Riley "jacked" the shotgun, but the shell jammed in the chamber. When Nelson saw that the gun had jammed, he grabbed the barrel of the shotgun and began "tussling" with Riley. As they wrestled, the window in the back door was broken and a hole was punched in the wall nearby. Nelson yelled for his female guest to call 911; she did but was too afraid to go outside to find out the house number. Nelson told Riley that 911 had been called, and Riley ran out the door, leaving his wallet and a bullet casing lying on the ground.

As soon as Riley left, Nelson called 911 again and gave the police his address. After the police arrived, Nelson received a phone call from Riley. Nelson put the phone on speaker, and the officers were able to hear Riley say, "I know where your momma lives. Bring me $300 and meet me down at the Watershed [or] otherwise I'm going to kill your momma." Officers immediately sent two cars to Nelson's mother's house to protect her. Riley then called back, apparently having realized that he no longer had his wallet, and told Nelson to bring Riley his wallet and $300 at a service station at Sixteenth and Pike in North Little Rock; Riley told Nelson that, if he brought any officers with him, Riley would kill Nelson's mother.

During Nelson's testimony, he identified Riley's jacket; the DVD player; photographs of a shattered window, his wall with a hole in it, a shotgun shell, and injuries to his nose and eyelid; and Riley's wallet, which contained his driver's license.

Little Rock Police Officer Byron Hopper testified that he responded to Nelson's 911 call. When Hopper arrived at the scene, the glass was broken out of the

---

1. A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark.Code Ann. § 5–39–201(a)(1) (Repl.2006).

2. Although the revocation petition was filed on August 26, 2009, and incorporated an allegation that Riley committed the offense of terroristic threatening on July 7, 2009, the State amended the petition at trial to reflect the October 2009 aggravated-robbery offense.

back screen door; in addition, Hopper observed that there was a hole in the wall just inside the door and a shotgun shell on the ground. Hopper also noted scratches on Nelson's face and bruises on his arms and back. Hopper was present when Riley called, and he heard Riley tell Nelson to "bring $300 and three grams and my wallet or I'm going to go kill your mother." [3] Hopper stated that Nelson showed officers the driver's license in the wallet and said "this is the guy that robbed us."

Little Rock Police Officer Shawn Ragan offered similar testimony, noting that he observed injuries on Nelson's face and arms, as well as the damage to the glass door and the wall. Nelson found the wallet on the floor and testified that the person on the identification in the wallet was Riley.

■ The sole basis of Riley's argument on appeal is that there was insufficient evidence that, during his encounter with Nelson, he was "armed with a deadly weapon." He notes the testimony of the two North Little Rock police officers who apprehended him, both of whom stated that Riley was not in possession of a firearm at the time of his arrest. Riley also urges that, although a shotgun shell was recovered at Nelson's home, there were no fingerprints or any other evidence to link him to the shell.

There was, however, Nelson's testimony that Riley pointed a sawed-off shotgun at his head, which would necessarily constitute proof that Riley was "armed with a deadly weapon." The circuit court obviously found Nelson's testimony credible, which was clearly a matter within its province. *See Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005) (it is the province of the trial court to determine the credibility of witnesses). As the testimony of one eyewitness is sufficient to sustain a conviction, *see Miller v. State*, 2011 Ark. 114, 2011 WL 913206, and *Rawls v. State*, 327 Ark. 34, 937 S.W.2d 637 (1997), there was substantial evidence to support the circuit court's finding that Riley committed the offenses of aggravated robbery and aggravated residential burglary.

■ In his second argument on appeal, Riley maintains that the State failed to prove by a preponderance of the evidence that he violated the conditions of his probation by failing to obey all state laws. The State proved beyond a reasonable doubt, however, that Riley committed the offenses of aggravated robbery and aggravated residential burglary, as described above. The appellate courts have noted that a finding of guilt beyond a reasonable doubt of a new offense is itself a sufficient basis to revoke probation. *See Gaines v. State*, 313 Ark. 561, 855 S.W.2d 956 (1993); *Johnson v. State*, 2009 Ark. App. 527, 334 S.W.3d 419. Accordingly, there is no merit to Riley's argument that the State failed to prove by a preponderance of the evidence that he failed to comply with the terms of his probation.

■ In his final point, Riley notes that the judgment and commitment order entered against him incorrectly recites that he had been found guilty of committing Class C felony fleeing. Riley points out that he was charged with, and convicted by the circuit court of, *misdemeanor* fleeing. It is apparent to us that the judgment and commitment order reflects a scrivener's error. *See Gholson v. State*, 2009 Ark. App. 373, 308 S.W.3d 189 (defining a true clerical error, one that may be corrected by a nunc pro tunc order, as "essentially one that arises not from an exercise of

---

3. Hopper qualified this statement, saying that he presumed the "three grams" referred to crack cocaine but also conceding that he was not sure that Riley said three grams.

the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)") (quoting *Francis v. Protective Life Ins. Co.*, 371 Ark. 285, 265 S.W.3d 117 (2007)).

A circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment or order. *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325; *State v. Rowe*, 374 Ark. 19, 285 S.W.3d 614 (2008) (quoting *Lord v. Mazzanti*, 339 Ark. 25, 29, 2 S.W.3d 76, 79 (1999), for the proposition that the common-law rule of nunc pro tunc orders and the power of a court to make "the record speak the truth, but not to make it speak what it did not speak but ought to have spoken," applies in criminal cases). Accordingly, we affirm Riley's convictions, but we remand this case in part for entry of a nunc pro tunc order to make the judgment and commitment order reflect Riley's conviction for misdemeanor, rather than felony, fleeing.

Affirmed; remanded in part.

WYNNE and HOOFMAN, JJ., agree.