

Cite as 2015 Ark. App. 728

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–15–441

| | |
|---|---|
| KENNETH COLE SIZEMORE<br>APPELLANT | **Opinion Delivered** December 16, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CR–2014-1700-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE MARK LINDSAY, JUDGE |
| | AFFIRMED; REMANDED IN PART FOR CORRECTED SENTENCING ORDER |

## CLIFF HOOFMAN, Judge

Appellant Kenneth Cole Sizemore appeals after he was convicted by a Washington County jury of misdemeanor negligent homicide and was sentenced to twelve months' imprisonment in the county jail and fined $2,500. On appeal, appellant's sole contention is that the trial court erred in denying appellant's motion for a directed verdict. We affirm appellant's conviction, but we remand in part for the circuit court to correct the sentencing order to reflect that appellant was convicted of misdemeanor negligent homicide pursuant to Arkansas Code Annotated section 5-10-105(b).

Appellant was charged with one count of manslaughter, a Class C felony, for recklessly causing the death of Zachary Tyler Hagan. A jury trial was held on February 17–18, 2015. On January 12, 2013, while driving a 2008 Chevrolet Tahoe, appellant's vehicle rolled over, killing one of the two passengers, Hagan, who was ejected from the front passenger seat. The

other passenger, Griffin Smith, testified at trial that he was friends with both Hagan and appellant; that he did not remember any of the events leading up to the accident; that he had a history of ingesting drugs with appellant and Hagan; that he thought he remembered an officer speaking to him after the accident but did not remember the questions or answers; that he did not remember telling an officer that he had bought an air-duster canister that night; and that he did not remember telling an officer that all three of them had been "hitting the air duster."

Kelly Hon testified that she had been driving on the road the night of the accident. She testified that while driving she heard squealing tires and observed appellant's vehicle weaving into the turn lane and then traveling toward her in her lane. She witnessed the vehicle cross lanes, overcorrect, hit an embankment, and flip. She had observed that, although it was a cold night, there was no ice or any other precipitation present on the road that night and that the road seemed fine. Another eyewitness, Christopher Comer, testified that he also had noticed headlights wiggling and coming toward him at approximately 11:30 or 11:45 in the evening. He further explained that he witnessed the vehicle come across all five lanes, hit a curb, and flip over. When Comer assisted appellant out of the vehicle, appellant initially told him that he was not driving but later stated that he was.

Officer Marcus Peace, employed by the Fayetteville Police Department, testified that he responded within minutes of the accident. While on the scene, appellant told Officer Peace that he had hit a patch of ice on the road, causing him to lose control of the vehicle. Officer Jason Christopher Alverado, an accident reconstructionist with the Fayetteville Police

Department, testified that he also was called out to the scene. He introduced several pictures of the accident and of the canisters of air duster that were found during the investigation. He further indicated that an air duster can be used as an intoxicant. He noted that the weather conditions were dry at the time of the accident and that he did not observe any ice on the road.

Officer Kurtis Sutley, a drug–recognition–expert instructor with the Fayetteville Police Department, testified that appellant's blood was drawn at the hospital after the accident. He also found a Wal-Mart receipt in Hagan's right front pants pocket that indicated that three canisters of air duster had been purchased just prior to the accident. Officer Sutley explained that canned air is classified as an inhalant and that it is a very fast-acting drug but dissipates very quickly. The drug in canned air, difluoroethane, causes oxygen deprivation to the brain and can cause one to pass out. Officer Sutley also testified that he had questioned appellant after the accident at the hospital. He testified that appellant's story was inconsistent. Initially, appellant alleged that he had not taken any drugs in several days and that he had not stopped at Wal-Mart on the night of the accident. However, after Officer Sutley pointed out the inconsistencies in appellant's story, appellant told him that he had stopped at Wal-Mart but denied using any drugs. Officer Sutley testified that appellant had alleged that he lost control when he had hit a patch of ice on the road.

Trooper Bobby Clemence for the Arkansas State Police testified at trial that he had been assigned to the state-wide crash-reconstruction team. He had analyzed the "black box" of the vehicle after the accident. He explained that the information revealed that the vehicle

SLIP OPINION

was traveling at sixty-six miles an hour at two and a half seconds before the accident. The vehicle continued to increase its speed to seventy miles per hour with ninety-five percent throttle at one and a half seconds, seventy-one miles per hour with one hundred percent throttle at one second, and seventy-three miles per hour with one hundred percent throttle at a half second. The rollover sensor recorded that the vehicle was traveling at seventy-five miles per hour when the vehicle started to roll. The instrumentation further indicated that the brakes were never engaged and that the accelerator was steadily pushed down to full throttle during the accident.

Danny Sanders testified that he was a forensic toxicologist with the Arkansas State Crime Lab. He explained that appellant's blood sample detected a presence of difluoroethane and tested positive for benzodiazepines, cannaboids, and oxycodone. He could not, however, specifically opine how long the drugs had been in appellant's system. He indicated that difluoroethane was a gas found in air-duster canisters and was a short-lasting drug that he would have expected to be out of a user's system within twenty to thirty minutes if it was ingested through the mouth. Second-hand exposure would dissipate even sooner. He further opined that a person would be affected by difluoroethane if it was found present in a person's blood. Although there would be a definite effect on a person, Sanders stated that the specific effects could vary on each person. Furthermore, Sanders opined that a large amount of the gas had to be ingested for the gas to remain in appellant's system.

Detective Brian Lindabury with the Fayetteville Police Department testified that he also had interviewed appellant early in the morning on January 13, 2013. Appellant told him

4

SLIP OPINION

that he was driving that night because Smith and Hagan had taken pills and needed a designated driver. Appellant indicated to him that he lost control after hitting a patch of ice on the road. A Wal-Mart surveillance video showed Smith and Hagan purchasing three cans of canned air from the store minutes before the accident; however, appellant had indicated at that interview that only two canisters of air were purchased. Appellant denied using any drugs the night of the accident. Another video played for the jury showed that appellant's vehicle was traveling at a higher rate of speed at the time of the accident than the other traffic. Although Detective Lindabury testified that he had not submitted the air-duster cans for a fingerprint analysis, he testified that three cans of canned air were recovered during the investigation of the accident. He specifically testified that the Wal-Mart receipt indicated that the cans were purchased at 11:33 p.m., the first call reporting the accident was received at 11:46 p.m., and appellant's blood was drawn at the hospital at 3:18 a.m.

After the State rested, appellant's counsel properly moved for a directed verdict, arguing that the charges should be dismissed on the basis that there was insufficient evidence to support a conviction of manslaughter or the lesser included offense of negligent homicide. Counsel argued that there was no testimony that indicated that the drugs in appellant's system affected his ability to drive, evidenced any knowledge of a risk, or evidenced appellant's level of impairment or intoxication. Furthermore, counsel argued that the jury would have to rely on speculation and conjecture to reach a verdict and that, at best, the evidence supported that appellant was merely careless or inattentive. The trial court denied appellant's motion for a directed verdict.

SLIP OPINION

Appellant testified on his own behalf. He testified at trial that the accident occurred because Hagan had sprayed air duster in his face while he was changing the music on his iPhone. He further explained that he had the phone in one hand and used his other hand to slap Hagan's hand. Appellant contended that, when he did so, he went up on the curb and lost control of the vehicle at that time. He also maintained at trial that he had not ingested any medications, narcotics, or any other drugs the night of the accident.

After appellant's counsel properly renewed appellant's motion for a directed verdict at the close of all evidence, the trial court again denied the motion. The jury found appellant not guilty of manslaughter but found him guilty of the lesser included offense of misdemeanor negligent homicide. The jury recommended a sentence of one year in the county jail and a fine of $2,500. After appellant was sentenced in accordance with the jury's recommendation, this timely appeal followed.

Appellant's sole contention is that the trial court erred in denying his motion for a directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Robinson v. State*, 98 Ark. App. 237, 254 S.W.3d 750 (2007). On appeal from a denial of a motion for a directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id*. Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*.

6

SLIP OPINION

The jury is free to believe all or part of a witness's testimony, and we do not weigh the credibility of witnesses on appeal, as that is a job for the fact-finder and not the appellate court. *Sizemore v. State*, 2015 Ark. App. 295, 462 S.W.3d 364.

"A person commits negligent homicide if he or she negligently causes the death of another person." Ark. Code Ann. § 5-10-105(b)(1) (Repl. 2013). "A person who violates subdivision (b)(1) of this section upon conviction is guilty of a Class A misdemeanor." Ark. Code Ann. § 5-10-105(b)(2). The criminal code states that a person is criminally negligent when the person "should [have] be[en] aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur." Ark. Code Ann. § 5-2-202(4)(A) (Repl. 2013). The criminal code further states that "[t]he risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor." Ark. Code Ann. § 5-2-202(4)(B).

Our supreme court in *Utley v. State*, 366 Ark. 514, 237 S.W.3d 27 (2006) affirmed a conviction for negligent homicide when the evidence showed that the defendant was driving a large commercial-garbage truck on a bridge and crossed the center line, struck a vehicle that swerved to get out of the truck's path, remained in the wrong lane of traffic for approximately one hundred and fifty feet without braking or swerving, and then collided with a pickup truck on the bridge, killing the driver. The *Utley* court affirmed the conviction, reasoning that "[a] person driving a garbage truck around a curve and on a bridge should be aware that driving

7

on the wrong side of the road presents a substantial and unjustifiable risk that he might hit a car traveling in the opposite direction and kill someone in that car." *Id.* at 518, 237 S.W.3d at 30.

Here, the evidence presented at trial indicated that the weather conditions were clear that night and that no one had observed any ice on the road at the time of the accident. Appellant was observed weaving, crossing five lanes of traffic at high speed, hitting a curb, and rolling his vehicle. An accident reconstructionist testified that the vehicle's black box indicated that the vehicle's speed had increased to seventy-five miles per hour before rolling over, that the brakes were never engaged, and that the throttle had been fully and completely pushed down. Furthermore, there was additional evidence that three cans of air duster had been purchased minutes before the accident and that a blood sample had detected the presence of difluoroethane, a fast-acting gas found in air-duster canisters, in appellant's blood. A forensic toxicologist further opined that a person would be affected by difluoroethane if it was later found present in a person's blood. Therefore, after viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports the jury's verdict.

Although we affirm appellant's conviction, there is an error in the sentencing order that must be addressed. Although appellant was found guilty of committing misdemeanor negligent homicide, the sentencing order incorrectly recites that he was convicted of the offense of negligent homicide pursuant to Arkansas Code Annotated section 5–10–105(a)(1), which is a Class B felony. It is apparent to us that the sentencing order reflects a scrivener's error. *Riley v. State*, 2011 Ark. App. 511, 385 S.W.3d 355. A circuit court can enter an order

8

nunc pro tunc at any time to correct clerical errors in a judgment or order. *Id.* Accordingly, we affirm appellant's conviction, but we remand in part for the circuit court to correct the sentencing order to reflect that appellant was convicted of misdemeanor negligent homicide pursuant to Arkansas Code Annotated section 5-10-105(b).

Affirmed; remanded in part for corrected sentencing order.

HARRISON and KINARD, JJ., agree.

*Evan & Evans Law Firm*, by: *James E. Evans, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.