Cite as 2023 Ark. App. 501

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-23-162

| | | |
|---|---|---|
| JAMES WILLIAMS | | Opinion Delivered November 1, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE UNION |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 70CR-22-66] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE HAMILTON H. |
| | | SINGLETON, JUDGE |
| | | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant James Williams appeals his conviction of two counts of felony negligent homicide. He argues that the Union County Circuit Court erred in denying his motion for a directed verdict based on insufficient evidence of his intoxication at the time of the accident. He also argues the court erred in admitting his medical records in violation of the confrontation clause. We affirm.

On February 8, 2022, the State filed an information alleging that Williams had committed two counts of negligent homicide in violation of Arkansas Code Annotated section 5-10-105 (Repl. 2013). He was charged as a habitual offender. The charges stemmed from allegations that Williams swerved into oncoming traffic and collided head-on with Shawn Strickland's pickup truck on March 27, 2021, around 7:30 p.m. The collision killed

Strickland and Williams's own passenger, Joanna McJunkin. The charges were based on the fact that Williams's blood tested positive for methamphetamine and THC and on witness testimony that Williams was driving in a manner that indicated impairment.

A two-day jury trial was conducted in September 2022 during which the State offered testimony from several witnesses. Lieutenant Eric Meadows with the Union County Sheriff's Office was dispatched to the crash and testified first. He said that when he arrived, two deputies were already on the scene, and he made contact with three witnesses. His body-camera footage was played for the jury. It included his talking with one of the witnesses who said that Williams's car "just made a b-line for [for the truck]." The footage also caught another person saying he saw Williams's car swerving and going below the speed limit leading up to the crash. Both witnesses said that Williams did not slow down when crossing the center line, and one said, "I guess he passed out or whatever happened."

Shelia Scott testified that she is the director of health information management in charge of medical records at Medical Center of South Arkansas where the victims and Williams were initially transported. Through her testimony, the State sought to introduce the medical records of Williams, Strickland, and McJunkin related to their treatment at the hospital after the crash. Williams objected to the admission of his own medical records. After a bench conference, the court took the matter under advisement.

Deputy Daniel Hughes testified that he was dispatched to the scene and was the second to arrive. He testified that he rendered aid to Strickland and assisted him on to the stretcher and then went to Williams's car, and he could "immediately smell the odor of

2

marijuana emitting from the vehicle." He testified that while Williams was being extricated from the vehicle, he was "belligerent, screaming, yelling, trying to fight the medical personnel that were trying to help him." Further, he testified that Williams's response was "consistent with someone who was intoxicated or under the influence of some type of narcotic." On the basis of his training and experience in working bad accidents, he did not believe Williams's reaction was normal behavior. He testified that no drugs or paraphernalia were located inside the vehicle or on Williams.

Jimmy Helms, a witness to the accident, testified that leading up to the crash, Williams was "all over the road." When describing the collision, he said, "[I]t was [like] two magnets drawn together. He just entered the southbound lane and hit him head-on." He testified that he never saw brake lights. Maryann Helms, his wife, testified that the road conditions had been clear that night.

State Trooper Dustin Cherry testified that when he arrived on the scene, he did not observe any skid marks or brake marks, which indicated that Strickland did not have time to react, and there was no evidence Williams had tried to stop. He said Williams did not have a valid driver's license at the time. Cherry testified that he walked by Williams's hospital room, and he could hear screaming and that "somebody was acting belligerent."

Deputy Zach Craig was also dispatched to the car crash, and he testified that while the paramedics were rendering aid to Williams, he was acting "very belligerent" and "combative."

Madeline Harvey, Williams's primary treating nurse the night of the incident, testified that there are certain standing orders when someone comes into the emergency room and has been in a car crash. She testified the urine drug screen is routine so that the medical team can appropriately treat the patient by looking for anything that could potentially interact with the medications that would be given. When asked about Williams's demeanor, Harvey testified, "[Williams] was irritable or erratic, who had an altered mental status, was unable to follow many commands initially. Disoriented would be a good way to put it. Appeared to be intoxicated, but that's not for me to diagnose at that time." The State again moved to admit Williams's medical records, which contained the drug test, and he objected. Harvey could not say for certain that she administered the test.

On cross-examination, Williams moved to have his partial medical report admitted into evidence to establish that his pupils were constricted and not dilated because dilation is indicative of methamphetamine and other drug use. The court would not allow a piecemeal admission of the report and instructed Williams that he could either allow the whole report or no report at all. Williams chose to allow the whole medical report. Harvey then testified there is no way you can say based on the presence of those drugs whether or not they caused intoxication because of how long they can stay in a person's system.

On redirect, Harvey read from the discharge summary of the medical notes that Williams was diagnosed with "methamphetamine intoxication and cannabis intoxication as well as altered mental status." She said this diagnoses was entered by Dr. Anthony Abraham, who was the physician working that night. Last, Harvey testified that she did not document

4

Williams as being intoxicated or appearing intoxicated; rather, she documented that he had "altered mental status."

The State rested and Williams moved for a directed verdict. In denying the motion for directed verdict, the court found,

> [T]he evidence of this defendant's driving immediately before the accident certainly gives rise to the suggestion that he was intoxicated or under the influence. So you have not only that physical evidence, but you also have [Williams's medical records] that also has within it both the urinalysis that . . . it was a specific finding of the physician that this defendant was intoxicated with methamphetamine and marijuana.

Patsy Jones, Williams's grandmother, then testified that Williams had been living with her and that he has substance-abuse issues, but the afternoon of the incident, she interacted with him, and he did not seem like he had been using illegal drugs. She admitted that she did not see him during the two hours leading up to the wreck. Jones testified that after the wreck, Williams checked himself into rehab and was trying to turn his life around.

Joey Williams, Williams's little brother, testified that he saw him the night of the accident sometime between 5:30 and 6:00 and that he did not seem intoxicated. He said he seemed aggravated with his girlfriend, McJunkin, but he left with her shortly after. He saw Williams get into the passenger seat.

Williams renewed his directed-verdict motion, which the court again denied. The jury then found him guilty, and he was sentenced to sixty years.

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *McEuen v. State*, 2023 Ark. App. 65, at 5, 660 S.W.3d 615, 619. In reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most

favorable to the State, considering only evidence that supports the verdict. *Id.* We will affirm the verdict if substantial evidence supports it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* Substantial evidence may be direct or circumstantial. *Id.* But circumstantial evidence is substantial only if it excludes every reasonable hypothesis other than the guilt of the accused. *Id.*

The jury may consider evidence in light of the jurors' observations and experiences and is entitled to draw reasonable inferences from the evidence. *Gould v. State*, 2023 Ark. App. 227, at 5–6. Witness credibility is also an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Id.*

"A person commits the offense of negligent homicide if he . . . negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a vehicle . . . [w]hile intoxicated." Ark. Code Ann. § 5-10-105(a)(1)(A). A person "acts negligently with respect to attendant circumstances or a result of his or her conduct when [he] should be aware of a substantial and unjustifiable risk that the attendant circumstances exist, or the result will occur." Ark. Code Ann. § 5-2-202(4)(A) (Repl. 2013). The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor. Ark. Code Ann. § 5-2-202(4)(B).

6

Williams argues that the court erred in denying his motion for directed verdict because a jury would have to rely on speculation and conjecture to determine intoxication in this case. He contends the only evidence of intoxication was in his medical report, which, by itself, is not sufficient.

Substantial evidence of Williams's intoxication was presented at trial. Williams hit Strickland's vehicle head-on. Williams did not engage his brakes or attempt to evade Strickland before hitting him. A witness described Williams "making a b-line" toward Strickland's vehicle. Another witness compared the accident to two magnets being drawn together. Deputy Hughes testified Williams's vehicle smelled of marijuana, and multiple witnesses testified he was acting belligerently and screaming at medical personnel. Hughes believed Williams's belligerent and combative behavior was consistent with a person who was intoxicated or under the influence of a narcotic. Harvey described Williams as irritable, erratic, disoriented, unable to follow many commands, and a person who had an altered mental status. Williams tested positive for THC and amphetamine in a urine drug screen administered as part of his care. He was diagnosed as having methamphetamine intoxication, cannabis intoxication, and an altered mental status.

We find a comparison of *Robinson v. State*, 98 Ark. App. 237, 254 S.W.3d 750 (2007), with *Henry v. State*, 2011 Ark. App. 169, 378 S.W.3d 832, instructive. In *Robinson*, we held that evidence of intoxication was insufficient when witnesses testified that the appellant did not seem intoxicated, and the only evidence of intoxication included the facts of the accident and the results of a drug screen. In contrast, in *Henry*, evidence of intoxication was sufficient

when, in addition to the facts of the accident and a positive drug screen, there was opinion evidence that the appellant was intoxicated. In distinguishing *Robinson*, the *Henry* court explained,

> In *Robinson v. State*, 98 Ark. App. 237, 254 S.W.3d 750 (2007), we found insufficient evidence of intoxication from an automobile accident and positive drug screen alone: police officers did not believe the appellant to be intoxicated after the accident, there was no drug paraphernalia in her car, co-workers observed no behavior beforehand indicating the influence of drugs or intoxicants, and toxicologists could not say that test results proved she was intoxicated.

2011 Ark. App. 169, at 8, 378 S.W.3d 836.

Here, like the facts in *Henry*, we have opinion evidence, the facts of the accident, and the positive drug screen to indicate that Williams was intoxicated. Accordingly, we hold that substantial evidence supports the verdict in this case.

Next, Williams argues that the confrontation clause was violated when the court allowed his entire medical record into evidence without a key supporting witness who had diagnosed him with methamphetamine and marijuana intoxication.

Williams raises a question of constitutional interpretation, which is subject to de novo review. *Seely v. State*, 373 Ark. 141, 145, 282 S.W.3d 778, 782 (2008). In order for hearsay statements to be admissible against a defendant at a criminal trial, two separate requirements must be met. *See Crawford v. Washington*, 541 U.S. 36, 60 (2004) (noting statements that fall under firmly rooted hearsay exceptions are not exempt from scrutiny under the Confrontation Clause). First, an exception to the general rule prohibiting hearsay must be demonstrated. Second, the admission of the hearsay cannot violate the defendant's

8

Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. amend. 6. Under *Crawford*, the analysis of whether the hearsay statement of a witness who does not appear at trial is admissible turns on whether the statement is testimonial. *Seely*, 373 Ark. at 148–49, 282 S.W.3d at 784–85. Here, we do not decide whether the medical records were testimonial because any error was harmless.

The Sixth Amendment right to confront witnesses is subject to harmless-error analysis. *Wright v. State*, 2022 Ark. App. 381, at 13, 653 S.W.3d 803, 811. Whether a Confrontation Clause violation is harmless error depends on a variety of factors, including the importance of the witness's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. *Ryan v. State*, 2016 Ark. App. 105, at 6, 484 S.W.3d 689, 693–94.

Here, even if the positive drug screen was admitted in error, the evidence was cumulative. Multiple witnesses testified that Williams was erratic and belligerent. Hughes testified that, on the basis of his training, Williams's behavior was consistent with intoxication. Additionally, multiple witnesses testified to facts of the accident that the jury could reasonably infer to indicate an intoxicated driver. Accordingly, we hold that the witness testimony and the facts of the accident made the positive drug screen cumulative and therefore unnecessary for the prosecution to prove Williams's intoxication.

Affirmed.

WOOD and BROWN, JJ., agree.

*Andrew W. Best*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.