UNITED STATES of America,
Plaintiff,

v.

Gregory SULLIVAN, Defendant.

No. CRIM.A.02–45–JBC.

United States District Court,
E.D. Kentucky,
Covington Division.

Jan. 31, 2003.

Laura Klein Voorhees, U.S. Attorney's Office, Covington, KY, for Plaintiff.

Kerry L. Neff, Dean A. Pisacano, Hellings & Pisacano, P.S.C., Covington, KY, Timothy E. Schneider, Ft. Thomas, KY, Gary J. Sergent, O'Hara, Ruberg, Taylor, Sloan & Sergent, Covington, KY, for Defendants.

## ORDER

COFFMAN, District Judge.

This matter is before the court on the plaintiff's motion to exclude expert testimony on the subject of eyewitness identification and the defendant's motion to admit the same. A *Daubert* hearing was conducted in Lexington, Kentucky on January 29, 2003. The court, having reviewed the record and being otherwise sufficiently advised, will permit the defendant's expert to testify.

At the outset, the court notes that while courts have traditionally hesitated to admit expert testimony on eyewitness identifications, the current trend in many courts, including the Sixth Circuit, is to admit such testimony, at least in some circumstances. *United States v. Langan*, 263 F.3d 613, 621 (6th Cir.2001). The admissibility of expert testimony is governed by Fed.R.Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion, or otherwise.

The Supreme Court clarified the trial court's role as a gatekeeper under Fed. R.Evid. 702 in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and in *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). As a gatekeeper, the court must determine that the expert's testimony, whether scientific, technical, or otherwise falling under Rule 702, is relevant and reliable. *Id.*

A non-exhaustive list of factors guides the court's inquiry: (1) whether the

theory or technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) its known or potential rate of error; and (4) whether the theory has gained general acceptance in its field. *Daubert,* 509 U.S. at 592–594, 113 S.Ct. 2786. These factors may not apply in every instance and the trial court has broad latitude in determining the reliability of an expert witness's testimony. *Kumho Tire Co., Ltd., v. Carmichael,* 119 S.Ct. at 1167.

### The proposed testimony.

At the *Daubert* hearing, the defendant proffered the testimony of Dr. Solomon Fulero. Dr. Fulero testified as to general theories of memory and the impact of those theories on the reliability of eyewitness identification. Dr. Fulero testified that there are three stages of memory—acquisition, retention, and retrieval. For each stage, he testified to numerous factors that may affect the ability of eyewitnesses to make accurate identifications. These factors were identified through extensive psychological studies and research.

### Reliability

At the first step, the court finds that the theories of memory underlying Dr. Fulero's testimony are scientific. Dr. Fulero testified that the studies establishing those theories were conducted in accordance with the scientific method—hypotheses were developed; experiments to test the hypotheses, designed to control for different variables, were conducted; and the results produced were analyzed and subject to replication by other researchers. Additionally, after considering the *Daubert* factors, the court finds that those theories provide a sufficiently reliable basis for Dr. Fulero's testimony.

The court finds that the theories underlying Dr. Fulero's testimony are generally accepted within the field of memory study and in the field of psychology generally. While it is true that there are scientists who disagree with those theories, *Daubert* does not require universal acceptance—only general acceptance. That some scientists in a field disagree with an expert's theories or conclusions does not render those theories or conclusions unreliable under *Daubert.*

The court also finds that the theories underlying Dr. Fulero's testimony are testable and have been tested. Dr. Fulero described how studies of the theories were carried out and discussed the general results, illustrating his points with discussions of specific studies.

The court finds that the theories underlying Dr. Fulero's testimony have been published and subjected to peer review. Dr. Fulero testified that he had published peer-reviewed articles on factors affecting eyewitness identifications, and that thousands of other articles had been published within the field.

Finally, due to the nature of Dr. Fulero's testimony, the court finds that there is no applicable "error rate." Dr. Fulero proposes to testify about the impact of certain factors on eyewitness reliability. For example, Dr. Fulero opined that a photographic array in which photographs are presented sequentially is more reliable than such an array in which the witness views all of the photographs simultaneously. Such an opinion is not susceptible to an error rate in the traditional sense because it makes no claim about the accuracy of an identification in a particular case. Accordingly, the court finds that error rate is not a relevant factor in this case.

In sum, the court finds that the theories underlying Dr. Fulero's testimony are scientific and sufficiently reliable under *Dau-*

*bert.* The court also finds that Dr. Fulero is qualified to testify concerning memory and eyewitness identifications. Dr. Fulero's qualifications are impressive.[1] Of particular note, Dr. Fulero was a member of the National Institute for Justice Technical Working Group for Eyewitness Evidence, a multidisciplinary group that developed a handbook *Eyewitness Evidence: A Guide for Law Enforcement.* That publication further refers readers to an article co-authored by Dr. Fulero, *Eyewitness Identification Procedures: Recommendations for Lineups and Photospreads,* 22 Law and Human Behavior 603 (1998).

**Relevance**

■ Next, the court must consider whether the expert testimony is relevant and will assist the trier of fact. *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786. The court finds that Dr. Fulero's proposed testimony is relevant and can be successfully applied to the facts in this case. The plaintiff complains that not all factors that affect the accuracy of eyewitness identifications are present in this case, and, therefore, that such testimony will not assist the jury. The court agrees that testimony concerning factors not implicated by the eyewitness identifications in this case are not relevant and are excluded.[2] Where the evidence elicited at trial shows that a particular factor may have influenced an eyewitness's identification of the defendant, however, Dr. Fulero's opinions can be applied and testimony on such factors is relevant.

The plaintiff also argues that Dr. Fulero's testimony would confuse the jury and should, therefore, be excluded.[3] To the contrary, the court finds that such testimony would educate—not confuse—the jury. Many of the hazards of eyewitness identification are not within the ordinary knowledge of most lay jurors. *United States v. Smithers,* 212 F.3d 306, 316 (6th Cir.2000) ("Today, there is no question that many aspects of perception and memory are not within the common experience of most jurors, and in fact, many factors that affect memory are counter-intuitive.").[4] Indeed, "jurors tend to be unduly receptive to, rather than skeptical of, eyewitness testimony." *Id.* at 315–16. Dr. Fulero's testimony will aid the jury in evaluating the accuracy of the eyewitness identifications of the defendant.

The plaintiff contends that an instruction alerting the jury to the various factors affecting the accuracy of eyewitness identification would be sufficient. The court finds that solution to be problematic for two reasons. First, without expert testimony on the theories of memory that underlie these factors, there is no foundation supporting the issuance of such instructions. Second, the court finds that introducing such factors for the first time in the jury instructions, without providing the jury any information about how those factors affect the identification process, is likely to be more confusing than helpful.

**Conclusion**

The court finds that Dr. Fulero's testimony is both relevant and reliable under

---

1. His qualifications were outlined in detail in the Vita submitted as defendant's exhibit 2 to the *Daubert* hearing.

2. For example, there is no indication that drug or alcohol use were factors in the eyewitness identification in this case.

3. Fed.R.Evid. 403 provides for the exclusion of relevant evidence where the probative value of the evidence is substantially outweighed by its tendency to confuse the issues or mislead the jury.

4. Dr. Fulero acknowledged that some factors, such as the acuity of the witness's vision or the quality of light at the scene, were within the ordinary knowledge of jurors and were not, therefore, appropriate subjects for expert testimony.

*Daubert* and, therefore, Dr. Fulero will be permitted to testify.[5] Accordingly,

**IT IS ORDERED** that the plaintiff's motion (Docket No. 66) to exclude the defendant's expert is **DENIED** and the defendant's motion (Docket No. 72) to admit expert testimony is **GRANTED**.

---

**5.** The court expects that Dr. Fulero's testimony will substantially conform to the testimony offered at the *Daubert* hearing.